†STATE OF OHIO EX REL. TEMPLIN ET AL. v. E. J. FARMER ET AL.

RESIDENT STOCKHOLDERS MAY HAVE MANDAMUS TO ENFORCE RIGHT TO INSPECT BOOKS.
   Where a private corporation, organized under the laws of a foreign state, is permitted by
      the charter to have an office in this state, the officers of such corporation residing here
      and having possession of the books of the corporation, the right of the shareholders
      therein, granted by statute of such state, to inspect the books of the corporation will
      be enforced, by appropriate remedies, in the courts of this state.

Mandamus.

CALDWELL, J.

This action is brought in mandamus by certain stockholders of the Magna Charta Mining Co., to compel Mr. Farmer, the president of the company, to produce the books of the company for inspection by them for the purpose of ascertaining the financial status of the company.

We are met at the very outset of this case with the proposition that we have no jurisdiction to hear and determine it, for the reason that it is a corporation organized under the laws of Colorado, in which state there is a statute granting to any shareholder permission to inspect the books of the company, and fixing a penalty for its violation. The penalty is not insisted upon here. It is said that this being a foreign corporation, the state of Ohio has no interest whatever in making this inquiry; that it is a matter of such a nature that the state will not inquire into it, and that mandamus is an action that cannot be resorted to in the courts unless some statute duty, or statute right, is involved in the case; that the right to inspect these books being a statutory right under the statute of another state, and not under any statute of Ohio, it is not an action to be pursued in the courts of Ohio, that a right or duty arising under the statutes of another state will not be enforced by the courts of this state, unless we have a statute similar in its nature, and that it cannot be done under any common law remedy.

Our statute says, "Mandamus is a writ issued in the name of the state, to an inferior tribunal, a corporation, board or person, commanding the performance of an act which the law specially enjoins as a duty, resulting from an office, trust or station."

The writ of mandamus was formerly held to be a prerogative writ. That doctrine is now entirely ignored both in England and in this country, and it is held to be a writ of right. The state may have a direct interest in the matter, and may not. It is still prerogative in a sense, but not in any sense that affects this case. Under recent decisions it is nothing more than an action between the party on whose relation it is brought and the defendant, and is an action at law. The state is simply a nominal party.

---

† This case in the supreme court was dismissed for want of preparation, December 11, 1894. 2 Legal News, 140.

It is insisted on the other side that the plaintiffs have a right to the writ in this case, not only because it is a common law right that the courts of this state will enforce, but because they have a right to the writ under the statute of Colorado.   It is not claimed in this case that this penal statute of Colorado in any way sets aside the common law, but it is assumed that the common law is in force in Colorado the same as it is in our state; nor is it claimed that it gives any new right. It may give a new remedy, and yet it is no remedy at all in the sense of a remedy by mandamus.   It simply punishes the party for his refusing to obey the law of the state of Colorado.   That being the case, it is insisted that the party is not compelled to accept the remedy that is provided in that state, but that he may have his right as a common law right, enforced here, or he may have his right under that statute enforced, and that he can have any remedy that is appropriate in the state where he seeks to have it enforced.

It is true, where a statute of another state is sought to be enforced in this state, that the statute is to govern the court in many things, but the remedy and the law of evidence are such as prevail where the case is being tried.   If the statute of one state gives a new right and a new remedy, there are many cases that hold that it will not be enforced in another state where they have not a similar statute and a similar remedy.   If the right arise in a state where there is no statute, if it is a common law right, and it is sought to be enforced in a state where there is a statute that gives a remedy that is not in harmony with the remedies or laws of the state where the statute is enacted, the case cannot be prosecuted in such state.   But we apprehend that this case does not come under either of these classes.   Here was no new right.   Here was no new remedy.   Hence the party is not confined to the remedy that is prescribed by that statute, but may seek his remedy in other places.   The question therefore is this:   If the statute gives a right to a party, the statute being a part of the charter of the corporation, may that right be enforced in another state where no statute exists, although the same right may exist in that state at common law, and a remedy is afforded to enforce the common law right in the state?

Our own supreme court, in 10 O. S., 121, has decided that "An administrator appointed in this state cannot maintain an action in the courts of this state, under a statute of the state of Illinois, authorizing the personal representative of a person who comes to his death by the wrongful act, neglect, or default of another to maintain an action against such other for damages, for the benefit of the widow or next of kin of such deceased person."

We do not refer to this case as presenting the exact question involved in the case before us, but because the court says some things that are of significance. They say further:   "We see no reason to suppose, from anything contained in the statute of Illinois, upon which the action professes to be founded, that it was intended to operate beyond the limits of that state."   That is a matter of very great significance in all inquiries of this kind—whether the statute is intended to be local or transitory in its operation.

This statute of Colorado allows this company to keep an office outside of that state.   It allows the books to be kept outside of that state.   It allows the business of the company to be transacted outside of that state.   That being the case, the statute referred to, requiring the officers of the company to furnish the books for inspection, is not, in the sense that it has been argued before us, a local statute, but it is transitory in its nature.   Our supreme court, in the case mentioned, has said:

"General words in statutes must always be constructed in view of the territorial limit to the powers of the legislature.   The legislature of Illinois did not intend to provide as to acts of negligence not occurring in that state, and did not intend to impose a trust or duty upon officers not appointed or acting under its laws.

"It is clear that an effort of the kind, had it been made, could have availed nothing beyond the limits and jurisdiction of that state.   If the statute of Illinois can have any effect in this state, it must be because the courts of this state adopt the rule it prescribes as proper to settle the rights of the parties.   If a statute of Illinois, as to persons or property within

its jurisdiction, imposes a trust or duty, or confers a right of a civil nature, and its enforcement is sought in the courts of this state, there may be cases in which both justice and comity would forbid that any objections should be interposed. * * * We take it to be clear that no such right of action existed at common law. It is a right of action given by statute, not to the intestate, but to his personal representative, not as general assets, but as a trust for the widow and next of kin."

The court then goes on to comment upon the difference between the statute of Illinois and the one in Ohio as to the distribution of this fund after it has been collected. In many of the cases brought in states other than the one in which the accident occurred the question has been raised, growing out of differences in the statutes of the two states. In some of the states there is a limit, as in our own, to the amount that can be recovered. In other states there is no limit. They make that a point of difference sufficient to oust a court of jurisdiction in a state where the statute is different from that of the state where the accident occurred. The administrator in the case from which we have read, was appointed in Ohio, and he brought suit here. The court say:

"We do not undertake to decide whether an administrator, appointed under the law of Illinois, might or might not maintain such an action, for the purpose of recovering the fund to be distributed under the law of Illinois. That case will present a very different consideration from the present."

In the case in the 103 U. S., at page 17, Justice Miller, delivering the opinion, says: "It can scarcely be contended that the act belongs to the class of criminal laws which can only be enforced by the courts of the state where the offense was committed, for it is, though a statutory remedy, a civil action to recover damages for a civil injury.

"It is indeed a right dependent solely on the statute of the state, but when the act is done for which the law says the person shall be liable, and the action by which the remedy is to be enforced is a personal and not a real action, and is of a character which the law recognizes as transitory and not local, we cannot see why the defendant may not be held liable in any court to whose jurisdiction he can be subjected by personal process, or by voluntary appearance, as was the case here.

"It is difficult to understand how the nature of the remedy, or the jurisdiction of the courts to enforce it, is in any manner dependent on the question whether it is a statutory right or a common law right.

"Wherever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties."

There is a great deal more in this decision of the same character. Justice Miller there holds that, even under a statute of the character of the one construed in Woodward v. Railroad, 10 O. S., 121, where the death occurred in New Jersey and the administrator was appointed in New York—the action was brought in New York and removed to the United States court—the statute gives a right to the party, which the court will enforce by its own remedies,

The same principle has been applied to stockholders' liability, which is entirely a statutory liability in this and in most of the states. That statutory liability will be enforced in almost any of the states, being an obligation or indebtedness created by the statute.

Whether it is a right to recover money, or a right to anything else, the principle is the same. The right is acquired and will be enforced by the procedure of the state where the action is commenced.

In the case in 90 Mo., 177, the county commissioners refused for six years to pay the interest on bonds and to pay the bonds. A citizen living in Missouri brought an action for damages. He first went to Kansas, where the commissioners resided, and begun proceedings in mandamus, and the commissioners were ordered by the court to levy the taxes to pay the bonds and the interest on them. The commissioners still refused. One of the commissioners being at the time in the state of Missouri he was served with process, a suit was brought and the same questions were there urged that are being urged here. The right of action grew out of the failure to observe a statute of the state of Kansas, and the

action was brought to recover damages on that account. The case gives a very interesting discussion of the law upon that subject, and cites a large number of other cases, especially the 84 N. Y., the 77 N. Y., a case in Wendell, and this case of the 103 U. S., and other cases, where it is said the court will enforce the right by its own remedies, if applicable.

In this case, the statute of Colorado required the officer to present the books of the corporation for inspection when called for at the proper time and place, which is of course a part of the charter.

It is insisted that it is a Colorado corporation, and is governed entirely by the laws of Colorado, that it is not even a resident of this state, and has no rights nor privileges in this state that would warrant the bringing of this action.

In Story's Conflict of Laws, pages 178-9, there is a lengthy discussion as to when a corporation becomes a resident of a state other than that wherein it is created, from which it clearly appears that a corporation, like an individual, may be born or created in one state and have a residence in another. Cases have been cited in this hearing to the effect that where a corporation is formed in one state and therein carries on its manufacturing, but having its office and transacting all its business in another state, as for example a corporation carrying on the work of manufacturing in Connecticut, but doing all its business in New York, it is so far a resident of the state of New York that it becomes subject somewhat to the laws, and to the regulations of the courts of that state, and it can be sued almost the same as though it was a corporation formed in that state. That being the case, these decisions running as they do, we believe that these parties had a right, under the statute of Colorado, to call upon Mr. Farmer and the other officers of this company to produce the books of the Magna Charta Mining Co. for examination, and on his refusing to do so they have a remedy by mandamus in this state. They may go to Colorado and enforce the penalty for refusing to obey the law of that state, and a law of the corporation, and they may have a case in mandamus, even while the penal suit is pending. That being the case, we think, under the circumstances of this case, and under the evidence, that the statute of Colorado was intended, not to be a local statute entirely, but was intended to follow these officers to Ohio, prescribe their duties here as to producing these books, and that they must produce these books not only in Colorado but in Ohio. It is true that makes this action a transitorial one. That being the case, we think the parties have a right, so far as the law is concerned, to prosecute this action.

It is urged here that this proceeding is an effort on the part of some of the stockholders of this company to destroy it and that these plaintiffs are in league with some of the stockholders for that purpose. It seems that when this company was organized the persons who took stock in the company were given to understand by Mr. Farmer that he owned all the claims through which the tunnel would pass, and that whenever a fissure should be cut that the ore in the fissure would be the property of the company. It seems that an investigation took place, and some one discovered that claims on the top of the mountain were taken and held some time before the tunnel was located in the mountain, and it was claimed that the parties there had the better right. These parties were not satisfied with Mr. Farmer's management, and were unwilling that the company should buy up those claims on top of the mountain, so as to make clear their title to them, and transfer them to the company, and thus Mr. Farmer would still hold a majority of the stock, and hold the control of this company. So they organized a new company, and the persons organizing the new company, as some of them testify on the stand, had induced a large number of persons in the old company to take stock in the new, with the understanding that it owned all these claims and had the entire right to them, and they set to work at once to incorporate the new company. They bought all those claims at $30,000. They are seeking now to have the stockholders of the old company come in and take stock in the new company, and the stock of the new company will be sufficient to pay simply for the $30,000,

and thus all the stockholders in the old company that will come into the new will be sure to own all these claims.

It is claimed that these parties plaintiff are working with those stockholders, and that those stockholders are working to overthrow this company and its management. The plaintiffs say they want to know just how they stand. Mr. Farmer is claiming that he has complete title to every fissure through which the tunnel has passed clear to the top of the mountain. The other parties are claiming that he has not, and that he has nothing but a miner's right, and he can hold none of these claims, except so far as the company has purchased them since its organization. It has bought some of them. That being the case, these parties say they want to know where they stand. They want to look into the papers; into the titles. They want to have an investigation to know whether they shall go into the new company to protect what rights they supposed they had in the old, or whether they are sufficiently protected in the old to remain there.

We see nothing in the action of these stockholders that have bought up those claims on the top of the mountain and formed a new company that antagonizes the old at all, so far as its real interests are concerned. If they have no rights they cannot injure the old. If they have the right to those claims then these stockholders ought to know it and go at once and protect the large amount of money they put into the old company. The old company has expended already more than a quarter million of dollars in driving that tunnel, and these stockholders have paid out a large amount of money. They have a right to know, and ought to know, just exactly what their rights are and where they stand, and we think they have a right to an investigation of the books. Mr. Farmer has never filed an itemized or full report of the financial standing of this company. He has never given any insight into this company, so far as the books are concerned, that is at all satisfactory to these stockholders, and it is his duty to do so.

We think they have a right to this writ they ask for, and it will be granted in this action.

C. E. Pennewell and T. L. Johnson, for plaintiffs.

Squire, Sanders & Dempsey, for defendants.