WILLIAM A. SMITH, Respondent, v. JOHN W. BERRYMAN, et al., Appellants.

St. Louis Court of Appeals. Argued and Submitted February 6, 1913. Opinion Filed April 8, 1913.

1. MANDAMUS: Right of Relator to Recover Damages. Where a return to an alternative writ of mandamus was adjudged

insufficient in law, on a motion for judgment on the petition and return, and the writ was accordingly made peremptory, damages could not be assessed in favor of the relator, under Sec. 2551, R. S. 1909, since that section applies only where there is an issue of fact raised on the return.

2. PLEADING: Function of Demurrer. A plea or pleading is not the same as a demurrer, which implies merely a refusal to plead.

3. MANDAMUS: Public Officers: Failure to Perform Duty: Election of Remedies. One who resorts to mandamus to compel a public officer to discharge a ministerial duty thereby loses his right of action against him for failure to perform such duty.

4. COSTS: Taxation: Attorneys' Fees. Except in certain cases where express provision is made for their allowance by statute, neither attorneys' fees nor any other costs incurred in prosecuting an action, other than those that are expressly taxable, are recoverable, either as costs or by way of damage.

5. MANDAMUS: Right of Relator to Recover Damages: Costs. Where a return to an alternative writ of mandamus against public officials, commanding the performance of official duties, was adjudged insufficient in law and the writ made peremptory, the relator was not entitled to recover, in a subsequent action against the respondents, for attorneys' fees, printing of briefs and other like expenses incurred in prosecuting the writ.

Appeal from Iron Circuit Court.—*Hon. E. M. Dearing,* Judge.

REVERSED. CAUSE CERTIFIED TO SUPREME COURT.

*David W. Hill* for appellants.

(1) The mandamus case was disposed of upon a motion of the relator for peremptory mandamus. State ex rel. v. Berryman, 142 Mo. App. 378. (2) The motion for peremptory writ on the return was in effect a demurrer. State ex rel. Snyder v. Newman, 91 Mo. 451. (3) The plaintiff brought this mandamus suit, the defendants made due return to the alternative writ, the facts were agreed upon in writing by both parties in the mandamus case and the relator filed his

motion for a peremptory writ, which motion was in effect a demurrer. The motion was sustained and the mandamus case, therefore, was disposed of upon a demurrer, and there is no foundation for this action as upon a false return, and defendant's demurrer to the evidence should have been sustained. State ex rel. v. Ryan, 2 Mo. App. 303; Secs. 2550, 2551, R. S. 1909; Achey v. Creech, 21 Wash. 319. (4) Plaintiff having had the right to plead and recover damages in his mandamus proceeding, cannot, after having prosecuted to a final judgment his action for mandamus, institute this, a second action, and recover damages. Achey v. Creech, 21 Wash. 319.

*N. A. Mozley* and *Ernest A. Green* for respondent.

(1) Appellants had only a ministerial duty to perform in granting respondent's application for a dramshop license. The only authority and power which appellants, as members of the city council of the city of Poplar Bluff, had with reference to the granting of dramshop licenses was "to levy and collect a license tax on liquor sellers." When the license tax was paid by respondent, he was entitled to the grant of a license and it was the ministerial duty of appellants to grant same. Sec. 9253, R. S. 1909; Sec. 5857, R. S. 1899; Laws 1907, p. 98; State ex rel. v. Berryman, 142 Mo. App. 373; City of Joplin v. Jacobs, 119 Mo. App. 134; Grider v. Tally, 77 Ala. 422; 29 Cyc. 1442, and cases cited; City of Montpelier v. Mills, 171 Ind. 175; Bennett v. Whitney, 94 N. Y. 302; Amy v. Supervisors, 11 Wall. 136. (2) Respondent is entitled to recover the damages sustained by him by reason of the failure and refusal of appellants to perform their ministerial duty towards him. An officer is liable in damages to the person injured, for his failure to perform a ministerial duty. State ex rel. v. Adams, 101 Mo. App. 468; Steadley v. Stuckey, 113 Mo. App. 582; Insurance Co.

v. Leland, 90 Mo. 177; State ex rel. v. Green, 124 Mo. App. 88; Grider v. Tally, 77 Ala. 422, 54 Am. Rep. 65. 29 Cyc. 1442, and cases cited; City of Montpelier v. Mills, 171 Ind. 175, 85 N. E. 6; County Com'rs v. Baker, 44 Md. 1; Bennett v. Whitney, 99 N. Y. 302; Amy v. Supervisors, 11 Wall. 136. (3) The attorney's fees and other expenses necessarily incurred and expended by respondent in and about the prosecution of the mandamus proceedings in the Springfield Court of Appeals, were proper items to be considered by the jury in determining the damages to be allowed to respondent herein. State ex rel. v. Adams, 101 Mo. App. 468; Grider v. Tally, 77 Ala. 422, 54 Am. Rep. 65; Gardner v. Gas. & Electric Co, 154 Mo. App. 666. (4) Respondent had the right to recover his damages in a separate action, and was not precluded from doing so because he did not plead and claim them in the original mandamus proceedings. Sec. 2551, R. S. 1909; State ex rel. v. Adams, 101 Mo. App. 471; Steadley v. Stuckey, 113 Mo. App. 582; Insurance Co. v. Leland, 90 Mo. 184; Grider v. Tally, 77 Ala. 422, 54 Am. Rep. 65.

STATEMENT.—Poplar Bluff, in Butler county, this State, is a city of the third class. Plaintiff, respondent here, filed an application and petition in the office of the city clerk, for a license to conduct a dramshop in a building on a certain lot in that city. Later the county court of Butler county granted plaintiff a license to keep a dramshop. Plaintiff thereupon paid to the city the amount required by the city ordinance for a dramshop license. Plaintiff's petition being presented to the city council, that body refused the license.

The governing body of cities of the third class is composed of the mayor and members of the council, the mayor being *ex officio* president. [R. S. 1909, sec. 9149.]

Plaintiff, claiming that on presentation of this license from the county court and payment of the li-

cense tax, he was entitled to open and conduct a saloon
in Poplar Bluff, and that the city council had no
authority to refuse him, and that their duty in the prem-
ises was merely ministerial, on the refusal of the city
council to permit him to open a dramshop, petitioned
the Springfield Court of Appeals, within the jurisdic-
tion of which court Butler county is situate, for a writ
of mandamus commanding the city council to set
aside the order refusing him a license to conduct a
dramshop and to grant an order issuing to him a license
to keep a dramshop at the place mentioned for
a period of six months. An alternative writ of
mandamus was issued by the Springfield Court of
Appeals, directed to the mayor and council of the city.
The mayor and council made return to the alternative
writ, justifying their refusal under the city ordinance,
the return also setting out that the petition for the
dramshop did not purport to be signed by two-thirds
majority of the assessed, tax-paying citizens and
guardians of minors owning property in the square
where the dramshop was desired, and that the relator
had not brought himself under the provisions of the
city ordinances, further setting up that the place at
which it was proposed to open the dramshop was not a
permanent building and that the city had enacted an
ordinance defining fire limits within the corporation
and that the place selected and designated by relator
for the purpose of carrying on his proposed dramshop
was within these fire limits and that the city council
had passed an ordinance ordering the removal of the
building as being a nuisance. On the cause coming
up for hearing in the Springfield Court of Appeals,
trial on the issues of fact was avoided by an agreement
that the relator was a law-abiding, assessed, tax-pay-
ing citizen of Butler county but not of Poplar Bluff;
that his petition presented to the city council contained
the names of two-thirds majority of the assessed, tax-
paying citizens, including guardians of minors owning

property in the square where the dramshop license was desired. This left the case on an issue of law, the relator raising that by a motion for peremptory mandamus, notwithstanding the return. The cause being heard by the Springfield Court of Appeals on the petition, return and motion for judgment on that return, the court made the alternative writ final, issuing a peremptory mandamus as prayed. The opinion of the Springfield Court of Appeals will be found under the title State ex rel. Smith v. Berryman et al., 142 Mo. App. 373, 127 S. W. 129.

In obedience to the command of the peremptory writ of mandamus, the mayor and city council of Poplar Bluff issued the license to the relator.

By reference to the report of the case of State ex rel. Smith v. Berryman et al., supra, it will be seen that the Springfield Court of Appeals held, on the authority of City of St. Louis v. Boatman's Ins. & Trust Co., 47 Mo. 150; City of St. Charles v. Elsner, 155 Mo. 671, 56 S. W. 291, and other authorities cited that the sections of the city ordinances relied upon by respondent were in conflict with section 9253, Revised Statutes 1909, which prescribest he powers of the city council of cities of the third class, and that when the county court had issued the license and relator had tendered the license fee, it was the duty of the city council to issue the license; that that body had no power to deny or refuse it and that its duty in connection with the matter was purely ministerial and not judicial.

On the conclusion of proceedings under and incident to the mandamus, the relator in that proceeding commenced the present action against the mayor and city council of Poplar Bluff. Charging that the acts of the mayor and council, in refusing the license, were unlawful and oppressive and that by reason of plaintiff being required to resort to the mandamus proceeding to compel performance of a ministerial duty, he

had been forced to pay and to obligate himself to pay, and that he did pay and obligate himself to pay, large sums of money to attorneys for their services in and about the prosecution of the mandamus proceeding; that he was compelled to pay and did pay large sums of money in his own traveling expenses as well as those of his attorneys in looking after and prosecuting those proceedings; that he was compelled to pay and did pay, large sums of money for stenographer's fees for services in preparing papers and briefs and other documents to be used in the prosecution of those proceedings, and to pay large sums for telephone messages and telegrams in and about the prosecution of that proceeding, and to pay docket fees and other court costs, and to pay large sums for the printing of briefs, records and other documents to be used in and about the prosecution of the mandamus, and had paid out large sums of money for express charges on briefs and other documents and was compelled to pay and did pay large sums of money to various persons for clerical work in preparing records and documents, and that he was greatly damaged in his business and reputation as a dramshop keeper, and that he lost large sums of money by reason of loss of patronage, in this as well as other dramshops owned by plaintiff, which loss, it is averred, was occasioned by his having to resort to legal process to compel the performance of the duties of defendants as mayor and members of the city council, as before set forth, all of which items of expense and damage were, as he alleges, in the sum of $5000, and all occasioned by the unlawful, illegal and oppressive acts of defendants, as mayor and members of the city council, plaintiff prays judgment for this amount as also for the further sum of $10,000, as punitive or exemplary damages, and for his costs.

It is as well to notice here that there was a motion to strike out portions of the petition, which was overruled, defendants excepting. Filing an answer, defendants, after a general denial, pleading that there

was a misjoinder of defendants and nonjoinder of parties defendant; that the mayor, John W. Berryman was not a proper party to the suit; that the councilmen had acted in good faith in refusing to grant a license to plaintiff for the reason that at the time of his application there was a bill pending before the council to condemn the building. It is further set up in the answer that plaintiff is precluded and estopped from claiming any damages by reason of the mandamus proceeding instituted and prosecuted by him to a final determination in the Springfield Court of Appeals, which judgment in the mandamus proceeding is pleaded in bar of all claims for damages on the part of plaintiff.

A reply in the nature of a general denial was filed to this answer.

At the trial plaintiff abandoned his claim for punitive damages; the evidence introduced by plaintiff, aside from putting in evidence the mandamus proceedings, being confined to the reasonable value of the expenditures mentioned, all testimony as to these items of damages being introduced over the objection of de-defendants that none of them were proper items of damage in this proceeding, and under the objection of defendants to any evidence on the ground that the petition did not state any cause of action.

At the conclusion of the introduction of evidence in chief by plaintiff, defendants interposed a demurrer to the effect that under the law and evidence plaintiff could not recover and the verdict of the jury must be for defendants. This was overruled, defendants excepting. Defendants introduced evidence tending to cut down the value of the services of the attorney and the reasonableness of the expenditures.

At the conclusion of the testimony in the case, defendants again demurred, or more accurately, asked an instruction in the nature of a demurrer to the evidence.

At the instance of plaintiff the court instructed the jury that under the pleadings and evidence they should find for plaintiff and assess his damages at such sum as they might find from the evidence would fairly compensate him for a reasonable attorney's fee, not exceeding the sum of $300, the printing of briefs and express thereon, not to exceed in any event the sum of $27.80, railroad fare expended by his attorney, not exceeding the sum of six dollars, the expense of procuring a certified copy of a paper offered in evidence, not exceeding $1.25, in all not exceeding $335.05; and that in determining for what items the jury would allow damages to plaintiff, they should allow only such items of expense above mentioned as they might find and believe were necessarily and properly expended or incurred by plaintiff in and about the prosecution of the mandamus proceeding in the Springfield Court of Appeals for the purpose of compelling defendants to issue to plaintiffs a license to keep a dramshop on a lot designated.

At the instance of defendants the court instructed the jury that in allowing plaintiff any of these items, they were not bound by the testimony as to the amount alleged to have been paid by plaintiff or as to the ressonableness of the amounts as testified to, but were to allow such amount as they believed to be reasonable under all the circumstances.

Defendants also asked the court to instruct the jury that they could not allow anything to plaintiff on account of attorney's fee or for printing briefs in the mandamus case. The court refusing to so instruct, defendants excepted.

The jury returned a verdict in favor of plaintiff for $150, judgment following for this amount and for costs. Defendants interposed a motion for new trial as well as in arrest, the latter on the ground that the petition in the case did not state any cause of action, and on the further ground that the record is erroneous

on its face. Those motions being overruled, saving exceptions to that action, defendants perfected their appeal to this court.

REYNOLDS, P. J. (after stating the facts).—The most carefully considered opinion in connection with mandamus that we have found in the reports of any of our appellate courts, is an opinion by Judge LEWIS, speaking for this court, in State ex rel. Alexander v. Ryan, 2 Mo. App. 303. That opinion was concurred in by Judge THOMAS T. GANTT, then a member of this court, the other member, Judge BAKEWELL, not sitting. Our statute relating to mandamus has not been changed with respect to any matters here involved from that in force at the time of the delivery of the opinion by Judge LEWIS in the Ryan case. It will be noted that the mandamus here under consideration went off on a motion for judgment on, practically, a demurrer to, the return. That was the situation in the Ryan case, respondent there filing an answer in the nature of a return to the alternative writ which had issued, as here, to which relator, as was done here, demurred. The trial court overruled the demurrer, judgment following denying the writ. From this relator appealed to our court, where the action of the trial court was reviewed, demurrer sustained and a peremptory writ ordered to issue.

This case involves, as did the Ryan case, a construction of what is now section 2551, Revised Statutes 1909. That section provides that in case a verdict shall be found "for the person suing out such writ, or judgment be given for him on demurrer, or by *nil dicit*, or for want of a replication or other pleading, he shall recover his damages and costs, in such manner as he might do in a civil action for a false return, and the same may be levied by execution, as in other cases." Here, as there, we are also to consider what is now section 2554, Revised Statutes 1909. That section provides:

"If any damages shall be recovered, by virtue of this article, against any person making return to such writ, he shall not be liable to be sued in any other action or suit for making such return."

In the Ryan case, after our court had held that it was one for the issue of a peremptory writ of mandamus, counsel for relator moved for an assessment of damages. It is on the action of our court on this motion that the decision in the Ryan case, beginning at page 306, 2 Mo. App., is here pertinent. In moving for an assessment of damages, counsel for relator in the Ryan case took the position, first, that the damages provided for under what is now section 2551, are those which the relator had sustained by reason of the official malfeasance or omission which the mandamus was intended to remedy; second, "that the recovery of such damages, in the contingencies stated, is a positive right, which cannot be qualified or denied;" and, third, that the words "in such manner as he might have done in a civil action for a false return," refer only to the forms or modes of procedure whereby the damages are to be recovered, and do not, in the least degree, qualify or limit the absolute right of recovery." Judge Lewis, noticing these contentions (l. c. 307) says: "A short review of the history of the law will demonstrate that neither of these positions is tenable." Noting that our statute is a literal transcript from that of 9 Anne, chap. 20, Judge Lewis says that the statute shortened the process in use prior to the enactment of that statute by allowing a traverse of the return and by allowing the traverser, upon proof of its falsity, to recover his damages, etc., "in such manner as he might have done in a civil action for a false return," that is, for the false return already made in that case, and shown to be so. Referring to this provision of the section allowing the relator to recover his damages and costs, "in such manner as he might do in a civil action for a false return," Judge Lewis says, referring to another opinion

Smith v. Berryman.

of the court in a case not cited, that this civil action for a false return here referred to, is an action against the defendant for his false return upon the alternative writ of mandamus. "It does not mean, as counsel's argument seems to imply, any independent common law proceeding for a false return, against a sheriff or other officer." That, says Judge Lewis, has been the uniform interpretation in England ever since the adoption of the statute, as well as in the States of the Union wherein the same statute has been enacted. The argument of the opinion all through, is that the statute provides for the recovery of damages in like manner as might have been recovered had the party suing out the writ brought his civil action for a false return. Referring to what is now section 2547, Revised Statutes 1909, which enacts: "When any writ of mandamus shall be issued, and return shall be made thereto, the person suing out or prosecuting such writ shall plead to or traverse all or any of the material facts contained in the return," Judge Lewis remarks that this makes no provision for a demurrer and that all the benefits of the statute, "including the summary recovery · of damages, can apply only to an issue of fact raised upon the return. The relator may demur. But, if he does so, is remitted to his own common law position as to damages, etc., and can claim no privileges under the statute." That is what occurred here, the relator, or person suing out the writ, demurred to the return. It is the person making the return, not the relator, who, under the provisions of what is now section 2548, Revised Statutes 1909, is required to reply, take issue or demur to the pleading of the party suing out or prosecuting such writ. That does not apply to the relator, and, in point of fact, here the relator did not plead to or traverse the return but demurred to it, and, as said by Judge Lewis, "No common law writer or lawmaker ever confounded a 'plea' or 'pleading' with a demurrer—which implies, simply, a refusal to plead."

In the mandamus case here involved, neither by pleading nor traverse was the return challenged, the matter which might have been called a denial having been eliminated. It was challenged, not as a false return, but by a motion for judgment on the petition and return, practically as on demurrer, as insufficient in law. The return was not adjudged to be a false return but to be insufficient in law. Hence, under the Ryan decision, there was no ground here for the application of the statute providing for the assessment of damages in favor of relator in the mandamus proceeding.

After disposing of that and holding that damages could not be assessed in favor of relator in the mandamus, the writ having been made peremptory, Judge LEWIS, speaking for our court, says (l. c. 310): "It should now sufficiently appear that the damages recoverable under the statute are not on account of the injury originally sustained by the person suing the writ, or any inconvenience directly resulting therefrom. Redress for such injury or inconvenience must be sought, if at all, in a separate action. It has been held, however, that the party injured by an official omission of a ministerial officer may have his choice between the suit for damages and the remedy by mandamus; but he cannot pursue both. [Kendall v. Stokes, 3 How. 87.] The relator here, it may be remarked, would have us permit him to pursue both remedies in the same proceeding."

It is to this part of the opinion in State ex rel. Alexander v. Ryan, supra, that counsel for respondent here, plaintiff below, take exception, claiming that it has been overruled by later decisions of our Supreme Court and of the Courts of Appeals, and that it is against the weight of authority outside of our State, those counsel arguing that the right of action for the damages sustained by reason of being compelled to resort to mandamus to compel the performance of a ministerial duty, is clear and that such damages can

be recovered in an ordinary action; that the right is a common law right.

Taking up this proposition as to the decision in this case having overruled in principle both by our Supreme Court, our own court, and by the Kansas City and Springfield Courts of Appeals, let us see whether that is true. The case referred to as decided by our Supreme Court is that of St. Joseph Fire & Marine Ins. Co. v. Leland, 90 Mo. 177, 2 S. W. 431. An examination of that case fails to support this contention of counsel. The facts in that case appear to be that the plaintiff, holding a large number of bonds issued by a county in the State of Kansas, had applied to the board of commissioners of that county to levy and cause to be collected on the property in the county subject to taxation, a tax sufficient to meet and pay off the interest coupons of the bonds as they matured. It was claimed that the defendants had not only failed to discharge that duty, which, it is averred, was a ministerial one, but had conspired with the other members of the board and other citizens of the county to cheat and defraud plaintiff out of the interest accruing and to accrue on the bonds, and for many years had prevented the board from levying and causing to be collected any tax or money to pay the interest on the bonds; that plaintiff instituted suits on interest coupons of the bonds and recovered judgment in the United States Circuit Court for the proper district; that that court, by its peremptory writ of mandamus, commanded the board and each member thereof to levy a tax on all property in the county subject to taxation for the purpose of paying the judgments, but that the defendant, for the purpose of carrying out the conspiracy and in order to cheat and defraud plaintiff, refused to obey the mandamus and induced other members of the board to disobey the writ, and had conspired with others and joined with them in declar-

173 Mo. App. 11

ing that they never would obey the writ of mandamus and would never issue the bonds.   Damages were asked against this defendant, who was found in this State, for his personal acts, his acts done in pursuance of a conspiracy between him and others to defraud plaintiff. That is no authority one way or the other for the position here taken by counsel for respondent and is in no sense a parallel case.

Our court in State ex rel. Wheeler v. Adams, 101 Mo. App. 468, 74 S. W. 497, sustained an action against the county treasurer after he had been directed by mandamus to pay certain warrants, but that action was in no sense an action such as the one at bar.   It was an action under the statute for the penalty of the bond and for damages accruing under it, in the nature of a penal action.   There are some general expressions in that opinion that tend to give color to the claim now made by plaintiffs, respondents here, but the point was not before our court in that case, as to whether, having brought his action for mandamus, the relator in that could maintain a separate action and a distinct action for damages accrued by reason of the mandamus. That point was not decided and whatever is there said about it is not within the scope of the decision.

The same may be said of Steadley v. Stuckey, 113 Mo. App. 582, 87 S. W. 1014, a decision by the Kansas City Court of Appeals.   There, it is true, the Kansas City Court of Appeals says, that being a ministerial duty which the defendant had left unperformed, he must render compensation to those whom he had injured by his failure to perform it, but it is not there decided that two separate actions, one by mandamus, the other for damages for failure to perform a ministerial act, can be maintained.   There is no discussion and no point made there on any such proposition. These are all the cases from our own courts to which we are referred, except a decision by the Springfield Court of Appeals, Gardner v. Gas & Electric Co., 154

Mo. App. 666, 135 S. W. 1023, in which, it is true, it is held by that court that a relator in a mandamus proceeding had a right to limit his prayer for relief to the issuing of the peremptory writ and did not thereby lose his right to institute an independent proceeding to recover the damages sustained by reason of having been put to mandamus to establish his right and compel performance. The only authority cited in support of this proposition by the Springfield Court of Appeals is People ex rel. Goring v. Wappingers Falls, 151 N. Y. 386. An examination of that case fails to sustain the proposition. The facts in this New York case do not bring it within this. The only relevant matter is the statement that the relator in the mandamus proceeding, under the New York law, woud have been entitled, if he had so elected at the time he obtained his final order, to an award of his damages against the defendant, and that he should not be driven to a second action to recover his damages. He had neglected to have his damages assessed when the mandamus was disposed of in the lower court, but on prevailing in the appellate court and on the cause going back to the trial court, he applied for assessment of of damages. The lower court denied this, because made too late. He appealed from this and the Court of Appeals, reversing the trial court, held that the failure to have damages assessed when the mandamus was awarded, had not deprived relator of his right to an assessment of them in the mandamus proceeding, because, under and in consequences of a stipulation that had been entered into, it had been agreed that the assessment of damages should be postponed until the cause had been determined by the appellate court. There is nothing in that decision that holds that, having resorted to mandamus for the redress of his grievance and neglected to apply for and have damages assessed, the relator could subsequently maintain an

action against respondent for damages suffered in consequence of a refusal to perform a ministerial act.

In Staedley v. Stuckey, supra, an action against defendant for damages incurred in having been driven to enforce the performance of a ministerial duty, no point was raised or in decision as to whether two actions would lie. All that can be said of it is, that the Kansas City Court of Appeals did sustain the action for damages. While it may be argued from the fact fact that the court recognized the action as one to be determined, it is not decisive of the point, and is not an adjudication of it.

These are the decisions of our own courts to which we are referred.

We are referred by counsel for respondent to Amy v. Supervisors, 11 Wall. 136, as sustaining their contention that they could resort to both remedies. Reading that case fails to sustain this contention. There it is said, at page 138, that the rule is well settled that where the law requires absolutely a ministerial act to be done by a public officer and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct. That is far from holding that one may have both remedies.

We are also referred to Grider v. Tally, 77 Ala. 422. That case is very like St. Joseph Fire & Marine Ins. Co. v. Leland, supra, a suit for damages for failure to obey an order issued in a mandamus proceeding, and like State ex rel. Wheeler v. Adams, supra, it is an action on an official bond.

So that, save the decision in Gardner v. Gas & Electric Co., supra, it is nowhere decided that one can have both actions, that is, mandamus against the ministerial officer compelling him to perform his duty and then a common law action against him for having failed to perform that duty. The authority for the proposition announced through our court by Judge LEWIS in

the Ryan case, that one has the choice of the remedies, but that selecting one he cannot resort to another, is the very great authority of the Supreme Court of the United States in Kendall v. Stokes, 3 How. 87.    There Mr. Chief Justice TANEY, speaking for all the members of the Supreme Court, except Mr. Justice McLEAN, at page 100, says:   "The plaintiffs show that they have sued for and recovered in the mandamus suit the full amount of the award; and having recovered the debt they now bring suit upon the same cause of action, because in the former one they could not recover damages for the detention of the money.   The law does not permit a party to be twice harassed for the same cause of action; nor suffer a plaintiff to proceed in one suit to recover the principal sum of money, and then support another to recover damages for the detention." Quoting from Lord MANSFIELD, in Moses v. Macfarlan, 2 Burr. 1010, to the effect "that the plaintiff having a right to bring an action of assumpsit for money had and received to his use on a special action on the case on an agreement, and having made his election by bringing assumpsit, a recovery in that action would bar one on the agreement, although in the latter he could not only recover the money claimed in the action of assumpsit, but also the costs and expenses he had been put to," Chief Justice TANEY holds that the case before the court falls directly within the rule stated by Lord MANSFIELD.   The chief justice then says:

"This objection applies with still more force, when, as in this instance, the party has proceeded by mandamus.   The remedy in that form, originally, was not regarded as an action by the party, but as a prerogative writ commanding the execution of an act where otherwise justice would be obstructed; and issuing only in cases relating to the public and the government; and it was never issued when the party had any other remedy.   It is now regarded as an action by the party on whose relation it is granted, but subject still

to this restriction, that it cannot be granted to a party where the law affords him any other adequate means of redress. Whenever, therefore, a mandamus is applied for, it is upon the ground that he cannot obtain redress in any other form of proceeding. And to allow him to bring another action for the very same cause after he had obtained the benefit of the mandamus, would not only be harassing the defendant with two suits for the same thing, but would be inconsistent with the grounds upon which he asked for the mandamus, and inconsistent also with the decision of the court which awarded it. If he had another remedy, which was incomplete and inadequate, he abandoned it by applying for and obtaining the mandamus. It is treated both by him and the court as no remedy. Such was obviously the meaning of the Supreme Court in the opinion delivered in the former suit between these parties, where they speak of the action on the case, and give him the mandamus, because the other form of action was inadequate to redress the injury, and they would not therefore require the plaintiffs to pursue it. And they speak of the action on the case as an alternative remedy; not as accumlative and in addition to the mandamus."

In the light of the authority of our own court in the Ryan case, and that of the Supreme Court of the United States as announced by Mr. Chief Justice TANEY, we are compelled to hold that having resorted to his remedy by mandamus to compel these officers to discharge a ministerial duty, plaintiff lost his right of action against them for failure to perform that same duty. He elected his remedy and having done that he must abide by it and cannot for the same cause, that is, failure to discharge a ministerial duty, resort to the other form of action.

We might properly stop here, but as the point is clearly in the case and has been briefed and argued by counsel with great learning and zeal, we hold that

independent of the above considerations, this plaintiff cannot recover for the expenditures made by him in prosecuting the mandamus.

Turning again to State ex rel. Alexander v. Ryan, supra, referring to what is now section 2549, which provides that "such further proceedings shall be had therein for the determination thereof, and in such manner as might be had if the person suing out such writ had brought his civil action for false return," Judge LEWIS (1 .c. 310) says:

"It should also appear that the statutory expression, 'in such manner,' etc., means nothing more nor less than under the like conditions and limitations as would apply to a civil action for a false return upon the alternative writ, if there were no statute in the case. It follows that the relator, in this instance, is entitled to the assessment of damages demanded, if he could have recovered them in such an action, and not otherwise.

"The relator demurred to the respondent's return. The decision of this court, in effect, sustained his demurrer. Thus the return was adjudged insufficient in law; and for, this reason, as well as because the facts alleged in the return were neither traversed nor pleaded to, there could have been no foundation for an action for false return. The relator is, therefore, not entitled to an assessment of damages.

"The reasoning and authorities with reference to damages on an injunction bond have no application here. . There, it is the defendant whose damages are assessed. He has not only been restrained in the exercise of a lawful right, but has also been forced into court against his will. The relator here comes into court voluntarily. True, he finds this necessary in order to enforce his rights. But the same may be said of every plaintiff in debt, covenant, or trespass. We have no precedent of an assessment of damages in any

such case, because of the expenses or inconvenience of the suit."

This is supported by authority which, while not controlling, is very persuasive.  [See People v. Supervisors, 28 N. Y. 112.]  On the authority of this and of other cases, Mr. Justice GAYNOR, speaking for the appellate division of the Supreme Court, in People ex rel. Lally et al. v. New York Cent. & H. R. R. Co., 102 N. Y. Supp. 385, holds that damages recoverable by a relator in a mandamus proceeding caused by a false return to an alternative writ, do no include counsel fees therein, that the only damages that the relator may recover in the proceeding under mandamus, are the same that he could have recovered in an action for a false return.  Such an action, says Judge GAYNOR, which is an action for tort, the tort being a false return, will not lie to recover counsel fees therein expended. "There is no tort action in which that can be done," says Judge GAYNOR, illustrating this with reference to various actions for tort.  This is in exact accord with what is held by our court in the Ryan case and quoted above.  We do not allow attorney's fees, recoverable either as costs or by way of damages in this state, or any costs but such as are expressly taxable, save in some excepted cases, such as on injunction bonds, vexatious delay in paying an insurance policy, and the like, and we allow them in such cases, only because the statute so provides.  [City of St. Louis v. Meintz, 107 Mo. 611, l. c. 615, 18 S. W. 30.]  No such provision is found in our statute relating to mandamus.  All damages there recoverable are as in an action for a false return, and as we have seen, they are never recoverable in such action.  So too, there can be no recovery for printing briefs, attending court and the like.  In short, none of the items for which a recovery was here allowed, are recoverable here, even if we were to hold that this action can be maintained at all, plaintiff having elected to resort to mandamus for his remedy.

The case of State ex rel. Wheeler v. Adams, supra, relied on very insistently by the learned counsel-for respondent, was an action under a special statute that in terms inflicted, as a penalty, double damages for the injury sustained against the officer and his sureties on his official bond, and in that case the only damages which had been allowed and which this court sustained, were the attorney's fees in the case. This, the court said, was allowable as damages in an action on the bond. Such an action bears no resemblance to one as for a false return.

For these reasons we hold that the judgment of the circuit court should be reversed. Inasmuch as this conclusion is in conflict with that of the Springfield Court of Appeals in Gardener v. Gas & Electric Co., 154 Mo. App. 666, it is ordered that this cause be and it is certified to the Supreme Court of the State for its determination. *Nortoni* and *Allen, JJ.*, concur.